1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

10

11     PAUL SCHRUPP,                          CIV. NO. 2:16-00636 WBS KJN

12                Plaintiff,                   MEMORANDUM AND ORDER RE: MOTION
                                               TO DISMISS
13          v.

14     WELLS FARGO BANK, N.A.; NDEX
       WEST, LLC; and DOES 1-20,
15     inclusive,

16                Defendants.

17

18                                ----oo0oo----

19          Plaintiff Paul Schrupp initiated this action against

20     defendants Wells Fargo Bank, N.A. ("Wells Fargo") and NDEX West,

21     LLC, alleging several causes of action based upon Wells Fargo's

22     failure to provide plaintiff a permanent loan modification prior

23     to foreclosing on his property.  Presently before the court is

24     Wells Fargo's motion to dismiss plaintiff's Complaint for failure

25     to state a claim upon which relief may be granted pursuant to

26     Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 6.)

27     Defendant NDEX West, LLC, the agent for the beneficiary and

28

                                      1

1  trustee under the deed of trust against plaintiff's home, joins

2  Wells Fargo's motion to dismiss.  (Docket No. 7.)

3  I.   Factual and Procedural History

4         On December 12, 2005, plaintiff borrowed $520,000 from

5  World Savings Bank secured by a deed of trust on his home.  (Req.

6  for Judicial Notice ("RJN") Ex. A (Docket No. 6-1).)  World

7  Savings Bank later changed its name to Wachovia Mortgage, FSB

8  before eventually becoming Wells Fargo Bank, N.A.  (Id. Ex. F.)

9  Plaintiff defaulted on his loan in December 2009 and Wells Fargo

10  caused a Notice of Default to be recorded in the Yolo County

11  Recorder's Office on March 26, 2010.  (Id. Ex. G.)

12         On August 10, 2010, plaintiff filed a Chapter 13

13  bankruptcy petition in the Eastern District of California

14  bankruptcy court.  (Id. Ex. H.)  The bankruptcy court confirmed

15  plaintiff's Chapter 13 plan on February 2, 2011, requiring

16  plaintiff to pay monthly installments of $2,899.24 to Wells

17  Fargo.  (Id. Ex. I.)

18         In May 2011, Wells Fargo invited plaintiff to

19  participate in a Home Affordable Modification Program ("HAMP")

20  Trial Period Plan ("TPP"), promising to offer plaintiff a

21  permanent loan modification if he made three timely monthly

22  payments of $1,500.01 and submitted the required documents.  (Id.

23  Ex. J.)  The bankruptcy court approved plaintiff's trial loan

24  modification with Wells Fargo on June 21, 2011.  (Id. Ex. O.)

25  The bankruptcy court noted, however, that it was approving the

26  trial modification despite plaintiff's failure to comply with the

27  requirements of the Federal Rules of Bankruptcy Procedure and

28  that plaintiff would be "well served to ensure that future

2

1   filings comply." (Id.)  Plaintiff alleges he began making the

2   modified trial payments on May 26, 2011.  (Id. Ex. L.)

3          On June 23, 2011, plaintiff moved to confirm his

4   modified Chapter 13 plan, which incorporated the terms of Wells

5   Fargo's loan modification.  (Id. Ex. K.)  On August 2, 2011,

6   however, the bankruptcy court denied plaintiff's motion to

7   confirm the modified plan without prejudice due to plaintiff's

8   procedural errors.  (Id.)  The bankruptcy court found that

9   plaintiff had "failed to meet the burden of proving the

10  requirements of confirmation" and explained the type of evidence

11  that a debtor must submit.  (Id.)

12         Plaintiff defaulted on his bankruptcy payment plan and

13  the bankruptcy trustee filed a motion to dismiss the bankruptcy

14  case on October 13, 2011.  (Id. Ex. L.)  On November 23, 2011,

15  the bankruptcy court found that plaintiff had failed to cure the

16  default and dismissed the case.  (Id.)

17         Plaintiff alleges that he made the three trial payments

18  and continued to make modified payments of $1,500.01 to Wells

19  Fargo for two months after the bankruptcy court denied his

20  amended Chapter 13 plan and two more months after his bankruptcy

21  case was dismissed.  (Compl. ¶ 25; see also RJN Ex. L.)  Wells

22  Fargo accepted these payments until January 20, 2012, when a

23  branch employee allegedly refused to accept the payment.  (Compl.

24  ¶ 25.)  Plaintiff alleges that Wells Fargo gave him contradictory

25  information over the next several years--first informing him that

26  it would investigate and correct the error the branch employee

27  made when he or she refused to accept payment, later refusing to

28  correct the error, and then again agreeing to correct the error.

3

1    (Id. ¶ 26.)  Wells Fargo later refused to communicate with

2    plaintiff because he was represented by counsel.  (Id. ¶ 27.)

3    Throughout this time, Wells Fargo sent monthly mortgage

4    statements to plaintiff demanding the higher amount due under the

5    original mortgage.  (Id. ¶ 29.)

6         On November 10, 2015, NDEX West, LLC, at the direction

7    of Wells Fargo, recorded a notice of trustee's sale.  (Id. ¶ 30.)

8    NDEX West, LLC conducted a foreclosure sale of plaintiff's home

9    on December 3, 2015 and Wells Fargo took title to the property.

10   (Id. ¶ 31; Wells Fargo's Mot. to Dismiss ("Mot. to Dismiss") at 3

11   (Docket No. 6).)  Plaintiff owed $722,059.93 on his loan at the

12   time of the foreclosure sale.  (RJN Ex. M.)

13        Plaintiff alleges five causes of action against Wells

14   Fargo for: 1) breach of contract; 2) promissory estoppel; 3)

15   violations of California's Rosenthal Fair Debt Collection

16   Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788; 4)

17   violations of the Equal Credit Opportunity Act ("ECOA"), 15

18   U.S.C. § 1691(d); and 5) violations of California's Unfair

19   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

20   Plaintiff also asserts a wrongful foreclosure claim against both

21   Wells Fargo and NDEX West, LLC.  Plaintiff seeks to set aside the

22   foreclosure sale, specific performance of the alleged contractual

23   obligations, statutory damages, actual damages, restitution, and

24   attorney's fees.  (Compl. at 13-14.)

25   II.  Legal Standard

26        A.   Motion To Dismiss

27        On a motion to dismiss under Rule 12(b)(6), the court

28   must accept the allegations in the complaint as true and draw all

1    reasonable inferences in favor of the plaintiff.  Scheuer v.

2    Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

3    Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

4    319, 322 (1972).  To survive a motion to dismiss, a plaintiff

5    must plead "only enough facts to state a claim to relief that is

6    plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

7    544, 570 (2007).  This "plausibility standard," however, "asks

8    for more than a sheer possibility that a defendant has acted

9    unlawfully," and where a complaint pleads facts that are "merely

10   consistent with a defendant's liability," it "stops short of the

11   line between possibility and plausibility."  Ashcroft v. Iqbal,

12   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

13          "While a complaint attacked by a Rule 12(b)(6) motion

14   to dismiss does not need detailed factual allegations, a

15   plaintiff's obligation to provide the 'grounds' of his

16   'entitle[ment] to relief' requires more than labels and

17   conclusions . . . ."  Twombly, 550 U.S. at 555 (alteration in

18   original) (citations omitted).  "Threadbare recitals of the

19   elements of a cause of action, supported by mere conclusory

20   statements, do not suffice."  Iqbal, 556 U.S. at 678; see also

21   Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the

22   framework of a complaint, they must be supported by factual

23   allegations.").

24       B.   Judicial Notice

25          In general, a court may not consider items outside the

26   pleadings when deciding a motion to dismiss, but it may consider

27   items of which it can take judicial notice.  Barron v. Reich, 13

28   F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

                                 5

1  notice of facts "not subject to reasonable dispute" because they

2  are either "(1) generally known within the territorial

3  jurisdiction of the trial court or (2) capable of accurate and

4  ready determination by resort to sources whose accuracy cannot

5  reasonably be questioned."  Fed. R. Evid. 201; see Castillo-

6  Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992).  Plaintiff

7  does not oppose Wells Fargo's requests for judicial notice.

8       The court will thus take judicial notice of the

9  documents related to the deed of trust, notice of default, and

10  the trustee's sale in exhibits A, G, M, and N.  (RJN Exs. A, G,

11  M, N.)  These are publicly recorded documents appropriate for

12  judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668,

13  689 (9th Cir. 2001) (noting that a court may take judicial notice

14  of matters of public record); see also Hopkins v. Wells Fargo

15  Bank, N.A., Civ. No. 2:13-444 WBS JFM, 2013 WL 2253837, at *1

16  (E.D. Cal. May 22, 2013) (taking judicial notice of a deed of

17  trust, notice of default and election to sell under deed of

18  trust, notice of trustee's sale, and trustee's deed upon sale).

19       The court will also judicially notice the United States

20  Department of Treasury documents in exhibits B through F related

21  to the charter and certification of World Savings Bank and its

22  renaming as Wells Fargo.  (RJN Exs. B-F.)  These documents are

23  readily verifiable and undisputed.  See Ferguson v. Wells Fargo

24  Bank, N.A., Civ. No. 2:12-2944 WBS GGH, 2013 WL 504709, at *3

25  (E.D. Cal. Feb. 8, 2013) (taking judicial notice of similar

26  documents reflecting official acts of the executive branch of the

27  United States that were readily verifiable and undisputed).

28       Finally, the court will take judicial notice of the

6

1   bankruptcy court documents within exhibits H, J, K, L, O, and P,

2   (RJN Exs. H, J, K, L, O; Suppl. RJN Ex. P (Docket No. 14)),

3   because "the authenticity and existence of a particular order,

4   motion, pleading or judicial proceeding, which is a matter of

5   public record, is judicially noticeable." United States v. S.

6   Cal. Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); see

7   also Lane v. Vitek Real Estate Indus. Grp., 713 F. Supp. 2d 1092,

8   1097 (E.D. Cal. 2010) (taking judicial notice of court documents

9   relating to plaintiff's bankruptcy proceedings); Lee, 250 F.3d at

10   690 (finding a court may take judicial notice of another court's

11   opinion, but not of the truth of the facts recited therein).

12   III. Discussion

13        A.   Breach of Contract

14            A claim for breach of contract requires (1) the

15   existence of a contract, (2) plaintiff's performance or excuse

16   for nonperformance, (3) defendant's breach, and (4) resulting

17   damages to plaintiff.  Reichert v. Gen. Ins. Co. of Am., 68 Cal.

18   2d 822, 830 (1968).  Plaintiff alleges that the TPP offered

19   pursuant to HAMP constituted a valid, enforceable contract and

20   Wells Fargo breached by failing to offer plaintiff a permanent

21   modification after he successfully paid the three trial payments.

22   (Pl.'s Opp'n at 3-4 (Docket No. 11).)

23            The United States Treasury Department started the HAMP

24   program in 2009 in response to the financial crisis to

25   incentivize banks to refinance mortgages of distressed homeowners

26   so they could stay in their homes.  Corvello v. Wells Fargo Bank,

27   NA, 728 F.3d 878, 880 (9th Cir. 2013).  HAMP aims to assist

28   homeowners who have defaulted or are in imminent danger of

7

1    defaulting on their home mortgages.  Inman v. Suntrust Mortg.,

2    Inc., Civ. No. 1:10-1031 AWI GSA, 2010 WL 3516309, at *1 n.2

3    (E.D. Cal. Sept. 3, 2010).

4         Eligible borrowers who wish to permanently modify their

5    loan through HAMP must first enter a TPP, which is a period of

6    three or more months during which the borrower must make timely

7    trial payments of the modified amount and provide required

8    documentation to the loan servicer.  Reichert, 68 Cal. 2d at 880-

9    81.  If the servicer concludes that the borrower is not eligible

10   for HAMP after reviewing the documents submitted or the borrower

11   does not make the required trial payments, the servicer must

12   promptly communicate the ineligibility determination to the

13   borrower in writing.  Id. at 881.  If the borrower complies with

14   the terms of the TPP, the servicer must offer the borrower a

15   permanent loan modification.  Id.  Home loan servicers and

16   lenders receive significant financial incentives from the

17   Treasury Department for each permanent modification they make.

18   Id. at 880.

19        "[A] trial loan modification under HAMP constitutes a

20   valid, enforceable contract under state law, at least at the

21   pleading stage of litigation."  West v. JPMorgan Chase Bank,

22   N.A., 214 Cal. App. 4th 780, 799 (4th Dist. 2013) (citing Wigod

23   v. Wells Fargo Bank, N.A., 673 F.3d 547, 556-57 (7th Cir. 2012));

24   see also Corvello, 728 F.3d at 883-84 (citing West with

25   approval); Meixner v. Wells Fargo Bank, N.A., 101 F. Supp. 3d

26   938, 947 (E.D. Cal. Apr. 24, 2015) (Nunley, J.) ("The Ninth

27   Circuit has recently held that, . . . a TPP Agreement offered

28   pursuant to HAMP is a contract, and a party to that contract may

                                  8

1    sue for breach if the lender violates a term contained within the

2    four corners of the TPP." (citing <u>Corvello</u>, 728 F.3d at 880)

3    (internal quotation marks omitted)).  While the modification is

4    not complete until all of the conditions are met, banks are

5    contractually obligated under the terms of the TPP to offer a

6    permanent modification to borrowers who comply with the TPP by

7    submitting accurate documentation and timely making the required

8    trial payments.  <u>Corvello</u>, 728 F.3d at 883.  The Ninth Circuit

9    has explained that this "interpretation of the TPP avoids the

10   injustice that would result were . . . [banks] allowed to keep

11   borrowers' trial payments without fulfilling any obligations in

12   return."  <u>Id.</u> at 884.

13        In this case, Wells Fargo offered plaintiff a TPP that

14   required plaintiff to make its first monthly trial period payment

15   of $1,550.01 by June 1, 2011 to accept the HAMP modification

16   offer.  (RJN Ex. J.)  In order to qualify for a permanent

17   modification, the offer required plaintiff to make three timely

18   payments of $1,550.01 by the first of June, July, and August

19   2011.  (<u>Id.</u>)  The offer letter notified plaintiff that, "[a]fter

20   all trial period payments are timely made and you have submitted

21   all the required documents, your mortgage would then be

22   permanently modified."  (<u>Id.</u>)  Accepting the allegations in the

23   Complaint as true, plaintiff made all three trial monthly

24   payments on time.[1]  (Compl. ¶ 25.)  As a result, plaintiff has

25        [1]   Wells Fargo disputes that plaintiff made his first
26   payment on time as plaintiff did not seek bankruptcy court
     approval of the trial modification until June 26, 2011.  (Wells
27   Fargo's Reply at 1 (Docket No. 13); RJN Ex. J.)  Plaintiff
     alleges, however, that he made his trial payments on time.
28   (Compl. ¶¶ 25, 35.)  Further, he contends that the trustee's

1   sufficiently alleged that he accepted the offered modification

2   and Wells Fargo breached the resulting modification agreement

3   when it failed to provide him a permanent modification.

4            The parties were not precluded from entering into this

5   modified agreement because plaintiff was in Chapter 13 bankruptcy

6   proceedings and already had a confirmed Chapter 13 plan in place

7   requiring monthly mortgage payments of $2,899.24 to Wells Fargo.

8   First, Wells Fargo did not condition the permanent modification

9   on approval by the bankruptcy court or confirmation of an amended

10  Chapter 13 plan.  As the drafter of the terms of its offer and,

11  presumably, the more sophisticated party, Wells Fargo cannot now

12  invoke a condition it did not include.

13           Further, the bankruptcy court approved the trial loan

14  modification and held that plaintiff was "authorized to amend the

15  terms of the loan with Wachovia Mortgage, a division of Wells

16  Fargo Bank, N.A., which is secured by the real property commonly

17  known as 517 D Street, Davis, California, and such other terms as

18  stated in the Trial Modification Agreement."  (Suppl. RJN Ex. P;

19  see also RJN Ex. O.)  The bankruptcy court therefore implicitly

20  approved the terms of the TPP, including the promise that the

21  loan would be permanently modified if all trial payments were

22  timely made and documents submitted.  While the bankruptcy court

23  subsequently denied confirmation of plaintiff's amended Chapter

24  13 plan, this was because of procedural errors unrelated to the

25  modified loan agreement.  (RJN Ex. K.)  Lastly, plaintiff's

26

27  notice of default demonstrates he made his first modified payment
    on May 26, 2011, prior to the June 1, 2011 deadline.  (Pl.'s
28  Opp'n at 4; see RJN Ex. L.)

1  bankruptcy case was dismissed in its entirety in November 2011,

2  releasing the parties from the confirmed Chapter 13 plan and any

3  restrictions the bankruptcy rules may have imposed on them.  The

4  bankruptcy proceedings therefore did not prevent the parties from

5  entering into a separate modification agreement.

6        Accordingly, the court finds plaintiff has adequately

7  alleged that the trial loan modification under HAMP constituted a

8  valid, enforceable contract and Wells Fargo breached that

9  contract by failing to offer plaintiff a permanent loan

10  modification.  The court must therefore deny Wells Fargo's motion

11  to dismiss plaintiff's breach of contract claim.

12        B.    Tender Requirement for Equitable Claims

13        Wells Fargo argues that plaintiff's failure to allege

14  he made a tender of his full outstanding debt precludes any

15  equitable relief.  (Mot. to Dismiss at 5.)  In California,

16  "[t]ender is required only when foreclosure has already occurred

17  and the plaintiff alleges irregularities in the foreclosure

18  process itself."  McGarvey v. JP Morgan Chase Bank, N.A., Civ.

19  No. 2:13-01099 KJM EFB, 2013 WL 5597148, at *11 (E.D. Cal. Oct.

20  11, 2013) (finding tender was not required under California law

21  because the plaintiff's promissory estoppel, negligence, and UCL

22  claims did not rely on any irregularities in the foreclosure

23  process); Ohlendorf v. Am. Home Mortg. Servicing, 279 F.R.D. 575,

24  580 (E.D. Cal. 2010) (finding that an allegation of tender was

25  required only for a cause of action for irregularity in the

26  foreclosure sale procedure, not the plaintiff's claims of

27  negligence, fraud, violation of the Real Estate Settlement

28  Procedures Act, the Rosenthal Act, or the UCL); Nugent v. Fed.

11

1  Home Loan Mortg. Corp., Civ. No. 2:12-00091 GEB EFB, 2013 WL

2  1326425, at *7 (E.D. Cal. Mar. 29, 2013) (finding tender was

3  required because the plaintiffs' claims for wrongful foreclosure

4  were based on irregularities in the sale notice and procedure and

5  no exception to the tender rule applied).  The rationale behind

6  the tender requirement is that if the borrower "could not have

7  redeemed the property had the sale procedures been proper, any

8  irregularities in the sale did not result in damages to the

9  [borrower].'"  Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112

10 (6th Dist. 2011) (citation omitted).

11        Plaintiff need not have alleged tender for his

12 promissory estoppel, Rosenthal Act, ECOA, UCL, or wrongful

13 foreclosure claims as they do not challenge any procedural

14 irregularities in the foreclosure process but rather allege Wells

15 Fargo failed to honor its promise to permanently modify his loan,

16 acted in a commercially unreasonable and unfair manner, and

17 lacked authority to foreclose on plaintiff's home when he was not

18 in default under the modified loan agreement.

19        C.   Promissory Estoppel

20        The elements of promissory estoppel are: "(1) a promise

21 clear and unambiguous in its terms; (2) reliance by the party to

22 whom the promise is made; (3) [the] reliance must be both

23 reasonable and foreseeable; and (4) the party asserting the

24 estoppel must be injured by his reliance." U.S. Ecology, Inc. v.

25 State, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (citation and

26 internal quotation marks omitted) (alteration in original); see

27 also Poway Royal Mobilehome Owners Ass'n v. City of Poway, 149

28 Cal. App. 4th 1460, 1471 (6th Dist. 2007); Diede Constr., Inc. v.

1    Monterey Mech. Co., 125 Cal. App. 4th 380, 385-86 (1st Dist.

2    2004).  "Because promissory estoppel is an equitable doctrine to

3    allow enforcement of a promise that would otherwise be

4    unenforceable, courts are given wide discretion in its

5    application."  U.S. Ecology, Inc., 129 Cal. App. 4th at 902

6    (citing C & K Eng'g Contractors v. Amber Steel Co., 23 Cal. 3d 1,

7    7-8 (1978)).

8              As discussed above, plaintiff alleges sufficient facts

9    to put forth a plausible claim that Wells Fargo made a clear

10   promise to plaintiff to offer him a permanent loan modification

11   if he timely made the trial payments and submitted the required

12   documents.  Plaintiff also adequately alleges that he relied on

13   this promise by timely making the three trial payments and

14   continuing to pay Wells Fargo the modified amount for several

15   more months.  (Compl. ¶¶ 25-28.)  Wells Fargo accepted these

16   payments even after plaintiff's modified Chapter 13 plan was

17   rejected and his bankruptcy case dismissed.  (Id.)  Wells Fargo

18   did not reject the modified payment amount until January 2012

19   and, even then, allegedly informed plaintiff it would investigate

20   and "correct its error."  (Id. ¶¶ 25-26.)  These allegations

21   support plaintiff's claim that Wells Fargo made a promise and

22   acted in accordance with this promise.

23             Lastly, plaintiff sufficiently alleges that he relied

24   to his detriment on Wells Fargo's promise to provide a

25   modification because he forewent other opportunities to avoid

26   foreclosure such as borrowing money to pay the default amount or

27   locating a buyer who would have allowed him to remain in the home

28   in exchange for rent.  (Id. ¶ 42); see West, 214 Cal. App. 4th at

1   805 (finding detrimental reliance where the plaintiffs alleged

2   they lost opportunities, including selling their home or finding

3   a co-signer); cf. Turbeville v. JPMorgan Chase Bank, Civ. No.

4   8:10-1464 DOC JCG, 2011 WL 7163111, at *5 (C.D. Cal. Apr. 4,

5   2011) (finding the plaintiffs sufficiently alleged detrimental

6   reliance by stating that they put their money towards TPP trial

7   payments rather than pursuing other avenues of curing their

8   default such as immediate bankruptcy proceedings); Wilcox v. EMC

9   Mortg. Corp., Civ. No. 8:10-1923 DOC JCG, 2011 WL 10065501, at *6

10  (C.D. Cal. July 25, 2011) (finding detrimental reliance where

11  plaintiffs alleged they put their money towards modified mortgage

12  payments rather than curing their default through bankruptcy,

13  short sales, cashing in on 401(k) funds, or paying other

14  creditors).  Plaintiff also alleges he suffered injuries from

15  higher loan balances, late charges, foreclosure related servicing

16  fees, potential income tax liability, and poor credit.  (Compl.

17  ¶ 42.)

18      Despite Wells Fargo's contention that any injury

19  plaintiff suffered was due to plaintiff's own failure to secure

20  an amended Chapter 13 plan incorporating the loan modification,

21  plaintiff has sufficiently alleged that the parties had a valid

22  agreement and plaintiff invested time and money in complying with

23  that agreement rather than pursuing other strategies.  Further,

24  even if the TPP did not constitute an enforceable contract,

25  plaintiff could arguably assert a promissory estoppel claim based

26  on Wells Fargo's failure to write that its permanent modification

27  offer was conditioned on bankruptcy court approval of an amended

28  Chapter 13 plan and continued acceptance of plaintiff's modified

1  payments even after the bankruptcy court rejected the amended

2  Chapter 13 plan.

3          Accordingly, the court will deny Wells Fargo's motion

4  to dismiss plaintiff's promissory estoppel claim.

5          D.    Rosenthal Fair Debt Collection Practices Act

6          California's Rosenthal Act prohibits debt collectors

7  from engaging in unfair or deceptive practices in the collection

8  of consumer debts.  Cal. Civ. Code § 1788.1.  As a threshold, the

9  defendant must fall within the Rosenthal Act's definition of

10 "debt collector" in order to be held liable for violating the

11 Act.  The Rosenthal Act defines a "debt collector" as "any person

12 who, in the ordinary course of business, regularly, on behalf of

13 himself or herself or others, engages in debt collection."  Id.

14 § 1788.2(c).  Foreclosure pursuant to a deed of trust is not debt

15 collection within the meaning of the Rosenthal Act unless it

16 includes "debt collection activities beyond the scope of the

17 ordinary foreclosure process."  Walters v. Fid. Mortg. of Cal.,

18 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (Damrell, J.); Webb

19 v. Bank of Am., N.A., Civ. No. 2:13-2006 MCE AC, 2013 WL 6839501,

20 at *5-6 (E.D. Cal. Dec. 23, 2013).

21         The Ninth Circuit has recognized that a loan servicer

22 offering a TPP under HAMP with a concomitant demand for trial

23 payments is engaged in debt collection activities beyond the

24 scope of the ordinary foreclosure process and, consequently, a

25 remedy may be available under the Rosenthal Act.  Corvello, 728

26 F.3d at 885 (finding Wells Fargo was a debt collector engaged in

27 debt collection when it offered the plaintiffs a TPP and demanded

28 trial payments); see also Webb, 2013 WL 6839501, at *6 (finding

15

1   the plaintiff sufficiently alleged the defendant was a debt

2   collector and its debt collection activities fell outside of the

3   normal foreclosure process where the defendant demanded payments

4   not owed under the modification agreement and informed plaintiff

5   she was in default when she was not).

6           Plaintiff has sufficiently alleged that Wells Fargo

7   engaged in debt collection under the Rosenthal Act by offering

8   plaintiff a TPP, requesting trial payments, and engaging in

9   improper activities servicing the loan by making "false,

10  deceptive, or misleading" statements to plaintiff that if he made

11  the TPP payments it would provide him a permanent loan

12  modification.  (Compl. ¶ 49.)  Plaintiff also alleges Wells Fargo

13  used unfair or unconscionable means to collect the debt when it

14  attempted to collect on the original amount due under the

15  promissory note rather than the modified agreement and provided

16  mixed messages about whether the rejection of the modified

17  payment in January 2012 was an error.  (Id. ¶ 50.)  Wells Fargo

18  was therefore engaged in conduct beyond enforcing the original

19  deed of trust.  Accordingly, plaintiff has stated a plausible

20  claim under the Rosenthal Act and the court must deny Wells

21  Fargo's motion to dismiss that claim.

22          E.   Equal Credit Opportunity Act

23          The ECOA prohibits creditors from discriminating

24  against credit applicants "on the basis of race, color, religion,

25  national origin, sex or marital status, or age."  15 U.S.C.

26  § 1681(a)(1).  In order to effectuate this goal, the ECOA

27  contains strict notice requirements that provide a basis for a

28  cause of action against creditors even without allegations of

1  discrimination.  See Schlegel, 720 F.3d 1204, 1210 (9th Cir.

2  2013); Errico v. Pac. Capital Bank, N.A., 753 F. Supp. 2d 1034,

3  1042 (N.D. Cal. 2010) ("[A] procedural violation of the notice

4  provisions of ECOA may provide the basis for a cause of action

5  even without regard to allegations of discrimination." (citing

6  Dufay v. Bank of Am., 94 F.3d 561 (9th Cir. 1996)).

7          Under the ECOA, when a lender takes an adverse action

8  against an applicant, the applicant is entitled to a statement of

9  reasons for the action or a written notification of the adverse

10 action that discloses the applicant's right to a statement of

11 reasons within thirty days after receipt of the applicant's

12 request.  15 U.S.C. § 1691(d)(2)(A)-(B).  Adverse action means "a

13 denial or revocation of credit, a change in the terms of an

14 existing credit arrangement, or a refusal to grant credit in

15 substantially the amount or on substantially the terms

16 requested."  15 U.S.C. § 1691(d)(6).  The term does not include a

17 "refusal to extend additional credit under an existing credit

18 arrangement where the applicant is delinquent or otherwise in

19 default."  Id.; see also 12 C.F.R. § 202.2(c)(2)(ii) (providing

20 that the term adverse action does not include "any action or

21 forbearance relating to an account taken in connection with

22 inactivity, default, or delinquency as to that account").

23         The Ninth Circuit has found that termination of a loan

24 modification agreement constitutes an adverse action.  Schlegel,

25 720 F.3d at 1211; see also Vasquez v. Bank of Am., N.A., Civ. No.

26 3:13-2902 JST, 2013 WL 6001924, at *13 (N.D. Cal. Nov. 12, 2013)

27 (finding a home loan modification request under HAMP constitutes

28 a credit application under ECOA); Cooksey v. Select Portfolio

1  Servicing, Inc., Civ. No. 2:14-1237 KJM KJN, 2014 WL 4662015, at

2  *3 (E.D. Cal. Sept. 18, 2014) (same).

3        For example, in Schlegel, the plaintiffs fell behind on

4  their mortgage payments, filed a Chapter 7 petition in

5  bankruptcy, and reaffirmed their loan with Wells Fargo.  720 F.3d

6  at 1206.  The plaintiffs then obtained a loan modification

7  agreement from Wells Fargo, which was approved by the bankruptcy

8  court, and began making modified monthly payments.  Id.  Wells

9  Fargo, however, failed to properly record the status of the

10 plaintiffs' loan modification and sent plaintiffs a series of

11 default notices informing them that it would be accelerating the

12 loan and commencing foreclosure proceedings.  Id. at 1206-07.

13 The plaintiffs sent Wells Fargo a letter asking it to explain its

14 failure to acknowledge the loan modification and, when Wells

15 Fargo did not respond, the plaintiffs filed suit under the ECOA.

16 Id. at 1207.  The Ninth Circuit found that Wells Fargo's default

17 notices constituted adverse actions under the ECOA as they

18 communicated Wells Fargo's refusal to abide by the terms of the

19 loan modification agreement, revoking the prior credit

20 arrangement.  Id. at 1211.  The Ninth Circuit therefore held that

21 the plaintiffs had sufficiently alleged an ECOA claim as Wells

22 Fargo failed to provide an explanation for this revocation of

23 credit until after the plaintiffs filed their complaint.  Id.

24        Just as in Schlegel, plaintiff defaulted on his loan,

25 entered into Chapter 13 bankruptcy, received an offer from Wells

26 Fargo for a TPP, obtained approval from the bankruptcy court of

27 the trial modification, and began making modified payments.

28 Without providing an explanation and after accepting the modified

payment for months, Wells Fargo allegedly refused to accept the modified payment amount in January 2012, thereby revoking the terms of the loan modification agreement.  (Compl. ¶¶ 66-69.) Despite Wells Fargo's assertion that the ECOA does not apply because plaintiff was in default, plaintiff has sufficiently alleged that the modified loan agreement cured his prior default and he was current on his payments under the modified loan. Wells Fargo's rejection of payment therefore constituted an "adverse action" for which it failed to provide a written statement of reasons or written notification.

Accordingly, the court must deny Wells Fargo's motion to dismiss plaintiff's ECOA claim.

F.    Unfair Competition Law

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) (citing Barquis v. Merchs. Collection Ass'n, 7 Cal. 3d 94, 110 (1972)).  Under this statute, a prevailing plaintiff is generally limited to injunctive relief and restitution of any interest acquired by means of unfair competition.  See Cal. Bus. & Prof. Code § 17203; Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 179 (1999).

Here, plaintiff alleges that Wells Fargo's conduct was unlawful because it violated the Rosenthal Act and the ECOA; unfair because Wells Fargo promised but failed to provide a permanent loan modification and initiated foreclosure proceedings

19

1   when plaintiff was current under the modified agreement; and

2   fraudulent in that Wells Fargo promised but failed to provide a

3   permanent modification.  (Compl. ¶¶ 72-75.)

4          Wells Fargo first contends that plaintiff does not have

5   standing to assert a UCL claim.  A private person has standing to

6   sue under the UCL if he can "(1) establish a loss or deprivation

7   of money or property sufficient to qualify as injury in fact,

8   i.e., economic injury, and (2) show that that economic injury was

9   the result of, i.e., caused by, the unfair business practice or

10  false advertising that is the gravamen of the claim." Kwikset

11  Corp. v. Superior Ct., 51 Cal. 4th 310, 322 (2011).  The purpose

12  of the UCL standing requirement is to "eliminate standing for

13  those who have not engaged in any business dealings with would-be

14  defendants and thereby strip such unaffected parties of the

15  ability to file 'shakedown lawsuits,' while preserving for actual

16  victims of deception and other acts of unfair competition the

17  ability to sue and enjoin such practices." Id. at 317.

18         Plaintiff clearly had a business relationship with

19  Wells Fargo and, as discussed above, has sufficiently alleged

20  injury due to a loss of real property through foreclosure and

21  financial loss due to late charges, foreclosure related servicing

22  fees, potential income tax liability, and poor credit.  (Compl.

23  ¶ 42); see Kwikset Corp., 51 Cal. 4th at 323 (noting there are

24  "innumerable ways in which economic injury" may be shown

25  including surrendering more or acquiring less in a transaction

26  than one otherwise would have, diminishment of a present or

27  future property interest, deprivation of money or property to

28  which one has a cognizable claim, or being required to enter into

20

1   a transaction costing money or property that would otherwise have
2   been unnecessary).

3           To establish that the economic injury was the result of
4   an unfair business practice, a plaintiff must show a "causal
5   connection or reliance on the alleged misrepresentation."
6   Kwikset Corp., 216 Cal. App. at 326 (citation and internal
7   quotation marks omitted).  A plaintiff is not, however,
8   "'required to allege that [the challenged] misrepresentations
9   were the sole or even the decisive cause of the injury-producing
10  conduct.'"  Id. at 327 (citation omitted) (alteration in
11  original).  "A plaintiff fails to satisfy the causation prong of
12  the statute if he or she would have suffered 'the same harm
13  whether or not a defendant complied with the law.'"  Jenkins v.
14  JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 522 (4th Dist.
15  2013) (quoting Daro v. Superior Ct., 151 Cal. App. 4th 1079, 1099
16  (1st Dist. 2007)).

17          For example, in Jenkins, the court found the plaintiff
18  lacked standing under the UCL because she could not establish a
19  causal link between the foreclosure of her home and the
20  defendant's six unlawful or unfair acts, all of which occurred
21  after the plaintiff defaulted on her loan.  Id. at 523.  Even if
22  the defendant had not acted unfairly, the plaintiff still would
23  have defaulted and suffered the same economic injury.

24          Unlike in Jenkins, plaintiff has plausibly alleged that
25  he was not in default under the modified loan agreement and lost
26  his home because of Wells Fargo's misrepresentations regarding a
27  permanent modification and rejection of payment.  Accordingly,
28  the court must deny Wells Fargo's motion to dismiss plaintiff's

1  UCL claim for lack of standing.

2      "Each prong of the UCL is a separate and distinct

3  theory of liability" and offers an "independent basis for

4  relief." Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir.

5  2009) (citing S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,

6  72 Cal. App. 4th 861 (4th Dist. 1999)).  "An action is unlawful

7  under the UCL and independently actionable if it constitutes a

8  violation of another law, 'be it civil or criminal, federal,

9  state, or municipal, statutory, regulatory, or court-made.'"

10 Cooksey, 2014 WL 4662015, at *7.  Given that plaintiff's

11 Complaint sufficiently alleges claims for breach of contract,

12 promissory estoppel, and violations of the Rosenthal Act and the

13 ECOA, it also states a claim under the UCL.  See Ramos v.

14 Citimortgage, Inc., Civ. No. 08-02250 WBS KJM, 2009 WL 86744, at

15 *6 (E.D. Cal. Jan. 8, 2009).  Accordingly, the court will deny

16 Wells Fargo's motion to dismiss plaintiff's UCL claim.

17     G. Wrongful Foreclosure

18      The elements of wrongful foreclosure are: "(1) the

19 trustee or mortgagee caused an illegal, fraudulent, or willfully

20 oppressive sale of real property pursuant to a power of sale in a

21 mortgage or deed of trust; (2) the party attacking the sale

22 suffered prejudice or harm; and (3) the trustor or mortgagor

23 tenders the amount of the secured indebtedness or was excused

24 from tendering.  West, 214 Cal. App. 4th at 800.  "It is the

25 general rule that courts have power to vacate a foreclosure sale

26 where there has been fraud in the procurement of the foreclosure

27 decree or where the sale has been improperly, unfairly or

28 unlawfully conducted, or is tainted by fraud, or where there has

22

1   been such a mistake that to allow it to stand would be

2   inequitable to purchaser and parties."   Bank of Am. Nat'l Trust &

3   Sav. Ass'n v. Reidy, 15 Cal. 2d 243, 248 (1940).

4          The first element is satisfied if, for example, "the

5   trustee did not have the power to foreclose" or the "trustor was

6   not in default, no breach had occurred, or the lender had waived

7   the breach."   Lona, 202 Cal. App. 4th at 104-05.   In Barroso v.

8   Ocwen Loan Servicing, LLC, 208 Cal. App. 4th 1001 (2d Dist.

9   2012), the court found that the plaintiff had alleged a basis for

10  wrongful foreclosure where the parties had reached an enforceable

11  agreement to modify the plaintiff's loan pursuant to HAMP, the

12  plaintiff timely paid all subsequent payments, and the defendant

13  nonetheless foreclosed.   Id. at 1017-18.   Similarly, in Bank of

14  America, N.A. v. La Jolla Group II, 129 Cal. App. 4th 706 (5th

15  Dist. 2005), the court found that the foreclosure sale was

16  invalid where the bank accepted the homeowner's tender of his

17  defaulted loan four days prior to when the foreclosure sale was

18  scheduled to take place but the trustee, ignorant of the tender,

19  still proceeded with the foreclosure sale.   Id. at 709, 712.   The

20  court found that "the trustor and beneficiary entered into an

21  agreement to cure the default" and reinstate the loan and, as a

22  result, no contractual basis remained for exercising the power of

23  sale and "the foreclosure sale was invalid."   Id. at 712.

24          In this case, plaintiff has adequately alleged that he

25  entered into a valid loan modification agreement with Wells Fargo

26  that cured the prior default, he timely made the modified

27  payments, and Wells Fargo nonetheless rejected his January 2012

28  payment and initiated foreclosure.   As in Barroso and Bank of

23

1   *America, N.A.*, Wells Fargo lacked contractual authority to reject

2   the modified payment and foreclose.  The Complaint therefore

3   contains sufficient facts that the non-judicial foreclosure was

4   conducted illegally and the court must deny Wells Fargo's motion

5   to dismiss plaintiff's wrongful foreclosure claim.

6           In addition to joining in Wells Fargo's motion to

7   dismiss, NDEX West, LLC also argues that plaintiff's wrongful

8   foreclosure claim against it should be dismissed because, as

9   trustee, it is protected from liability under California Civil

10  Code section 2924(b).[2]  (NDEX Joinder at 4 (Docket No. 7).)

11  Section 2924(b), which deals with transfers and sales of deeds of

12  trust, states: "the trustee shall incur no liability for any good

13  faith error resulting from reliance on information provided in

14  good faith by the beneficiary regarding the nature and the amount

15  of the default under the secured obligation, deed of trust, or

---

16          [2]   NDEX West, LLC also claims plaintiff has no viable
17  claim against it because it has no financial interest in the
    property.  (NDEX Joinder at 4.)  It did not, however, file a
18  declaration of nonmonetary status pursuant to California Civil
    Code section 2924l.  Section 2924l provides that a trustee under
19  a deed of trust may serve on the parties a declaration of
    nonmonetary status if it "is named in an action or proceeding in
20  which that deed of trust is the subject, and in the event that
    the trustee maintains a reasonable belief that it has been named
21  in the action or proceeding solely in its capacity as trustee,
    and not arising out of any wrongful acts or omissions on its part
22  in the performance of its duties as trustee."  Cal. Civ. Code
    § 2924l(a).  If no parties object to the nonmonetary judgment
23  status of the trustee within fifteen days from service of the
    declaration, "the trustee shall not be required to participate
24  any further in the action or proceeding."  *Id.* § 2924l(d).  If a
    party timely objects, the trustee shall be required to
25  participate.  *Id.* § 2924l(e); *see also* Cabriales v. Aurora Loan
26  *Servs.*, Civ. No. C-10-161 MEJ, 2010 WL 761081, at *1 n.1 (N.D.
    Cal. Mar. 2, 2010) (noting the trustee had filed a declaration of
27  nonmonetary status and the trustee was therefore no longer a
28  party to the action).

1    mortgage."  Cal. Civ. Code § 2924(b).

2         For example, in <u>Shelby v. Ocwen Loan Serv., LLC</u>, Civ.

3    No. 2:14-2844 TLN DAD, 2015 WL 5023020 (E.D. Cal. Aug. 24, 2015),

4    the court found that the trustee was entitled to immunity under

5    section 2924(b) for "carrying out its routine duties as trustee"

6    in furtherance of the non-judicial foreclosure and the plaintiffs

7    had failed to substantiate allegations of malice or any other

8    exception to immunity.  <u>Id.</u> at *4.  The court therefore dismissed

9    the plaintiffs' wrongful foreclosure claim against the trustee.

10   Similarly, in <u>Lundy v. Selene Finance LP</u>, Civ. No. 15-5676 JST,

11   2016 WL 1059423 (N.D. Cal. Mar. 17, 2016), the court dismissed

12   the plaintiff's claims against the trustee because they were

13   "based entirely on its role in initiating foreclosure proceedings

14   at the direction of the other Defendants" and the plaintiff

15   identified no allegations that the trustee "acted with malice or

16   in bad faith in discharging its duties as trustee and initiating

17   foreclosure proceedings."  <u>Id.</u> at *5; <u>see also</u> <u>Swanson v. EMC</u>

18   <u>Mortg. Corp.</u>, Civ. No. 09-1507 LJO DLB, 2009 WL 4884245, at *5

19   (E.D. Cal. Dec. 10, 2009) (dismissing the plaintiff's wrongful

20   foreclosure claim against the trustee because of the protection

21   provided by section 2924(b)); <u>Powell v. Wells Fargo Home Mortg.</u>,

22   2015 WL 4719660, *6-7 (N.D. Cal. Aug. 7, 2015) (finding the

23   trustee was "immune to Plaintiff's state law claims arising from

24   recording of the notice of default and related acts" under

25   section 2924(b) to the extent the trustee relied on the lender's

26   information).

27        Plaintiff alleges only that NDEX West, LLC, "in

28   accordance with Wells Fargo's directions, filed a Notice of

Trustee Sale" and, "in accordance with Wells Fargo's directions, conducted or allowed to be conducted a foreclosure sale of the Subject Property." (Compl. ¶¶ 30-31.) He states that "[d]efendants were guilty of malice, fraud, or oppression" but fails to substantiate this conclusory statement with any supporting facts. (Id. ¶ 59.) Plaintiff's wrongful foreclosure claim against NDEX West, LLC appears to be based entirely on NDEX West, LLC's initiation of non-judicial foreclosure at the direction of Wells Fargo--privileged trustee activity. Accordingly, the court will grant NDEX West, LLC's motion to dismiss plaintiff's wrongful foreclosure claim without prejudice.

IT IS THEREFORE ORDERED that Wells Fargo's motion to dismiss plaintiff's Complaint (Docket No. 6) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that NDEX West, LLC's motion to dismiss plaintiff's wrongful foreclosure claim against it (Docket No. 7) be, and the same hereby is, GRANTED without prejudice.

Plaintiff has twenty days from the date this Order is signed to file a First Amended Complaint setting forth a wrongful foreclosure claim against NDEX, West, LLC, if he can do so consistent with this Order.

Dated:  July 13, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

26