UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SCHRUPP, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; NDEX WEST, L.L.C.; and DOES 1-20, inclusive,<br><br>Defendants. | CIV. NO. 2:16-636 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO AMEND |

Plaintiff Paul Schrupp initiated this action against defendant Wells Fargo Bank, N.A. ("Wells Fargo") alleging several causes of action based upon Wells Fargo's failure to provide plaintiff a permanent loan modification prior to foreclosing on his property.[1] Presently before the court are plaintiff's Motion to Amend (Docket No. 55), Wells Fargo's Motion for Summary Judgment (Docket No. 51), and plaintiff's Motion for Partial Summary Judgment (Docket No. 52).

I. Factual and Procedural History

---

[1] NDEX West, L.L.C was originally a defendant in this case as well, but was dismissed on September 9, 2016.

1

On December 12, 2005, plaintiff borrowed $520,000 from World Savings Bank secured by a deed of trust on his home. (Decl. of Meredith R. Deal ("Deal Decl.") (Docket No. 51-5) ¶ 9.) World Savings Bank subsequently changed its name to Wells Fargo. (Id. ¶ 2.) Plaintiff defaulted on his loan in December 2009 and Wells Fargo caused a Notice of Default to be recorded in the Yolo County Recorder's Office on March 26, 2010. (Id. ¶¶ 10, 12.)

On August 10, 2010, plaintiff filed a Chapter 13 bankruptcy petition in the Eastern District of California Bankruptcy Court. (Request for Judicial Notice ("RJN") Ex. H.)[2] The Bankruptcy Court confirmed plaintiff's Chapter 13 plan on February 2, 2011, requiring plaintiff to pay monthly installments of $2,899.24 to Wells Fargo. (Id., Ex. I; Decl. of D. Dennis La ("La Decl.") (Docket No. 51-3) ¶ 9.)

In May 2011, Wells Fargo invited plaintiff to participate in a Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP"), promising to offer plaintiff a permanent loan modification if he made three timely monthly payments of $1,500.01 and submitted the required documents. (Deal Decl. ¶¶ 13, 18.) If plaintiff satisfied these requirements, the modification would be implemented, and after three years Wells Fargo would waive a total of approximately $95,000 in principal balance. (Id.) The Bankruptcy Court approved plaintiff's trial loan modification with Wells Fargo on June 21, 2011. (La Decl., Ex. 68.)

---

[2] The court previously took judicial notice of all requested documents when issuing its July 13, 2016 Motion to Dismiss. (Docket No. 16.)

On June 23, 2011, plaintiff moved to confirm his modified Chapter 13 plan to permanently implement the TPP payment amount. (RJN, Ex. K.) On June 30, 2011, the bankruptcy trustee disbursed the first TPP payment of $1,550.01 to Wells Fargo, which was received on July 12, 2011. (Deal Decl. ¶ 20.) On July 26, 2011, Wells Fargo sent the trustee and plaintiff's counsel a letter stating that Wells Fargo was "unable to offer a modification" because plaintiff failed to make his TPP payments on time. (Id. ¶ 21.) On August 1, 2011, plaintiff contacted Wells Fargo, arguing he did in fact make timely payments and asking how to reinstate his TPP payments. (Id. ¶ 6.)

On August 2, 2011, the Bankruptcy Court denied plaintiff's motion to confirm the modified plan without prejudice due to plaintiff's procedural errors. (Id.) The Bankruptcy Court found that plaintiff had "failed to meet the burden of proving the requirements of confirmation" and explained the type of evidence that a debtor must submit. (Id.)

Plaintiff defaulted on his bankruptcy payment plan; and the bankruptcy trustee filed a motion to dismiss the bankruptcy case on October 13, 2011. (RJN, Ex. L.) On November 23, 2011, the Bankruptcy Court found that plaintiff had failed to cure the default and dismissed the case. (Id.) Wells Fargo continued to send plaintiff monthly mortgage statements demanding the amount due under the original mortgage plan. (Schrupp Decl. ¶ 46, Ex. I.) On December 3, 2015, Wells Fargo purchased the property at a foreclosure sale. (Deal Decl. ¶ 25.) Plaintiff owed $722,059.93 on his loan at the time of the foreclosure sale. (RJN, Ex. M.)

Plaintiff initiated this case in Yolo County Superior

Court on January 19, 2016, alleging six causes of action against Wells Fargo for: (1) breach of contract; (2) promissory estoppel; (3) violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788; (4) wrongful foreclosure; (5) violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d); and (6) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

Wells Fargo removed the action to this court and moved to dismiss plaintiff's claims on April 1, 2016. (Docket No. 6.) The court denied that motion in full on July 13, 2016. (Docket No. 16.)

II. Plaintiff's Motion for Leave to Amend

Plaintiff seeks to amend his complaint in order to incorporate additional facts that were revealed during discovery. Generally, "leave to amend shall be freely given when justice so requires." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006); see also United States v. Hougham, 364 U.S. 310, 316 (1960) (discussing the "liberal rules governing the amendment of pleadings" and how Rule 15 "was designed to facilitate the amendment of pleadings").

However, a district court may decline to grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp., 465 F.3d at 951. "[T]he consideration of prejudice to the opposing party carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Additionally, once a

scheduling order has been entered, no further amendment of pleadings is permitted except with leave of court, good cause having been shown under Federal Rule of Civil Procedure 16(b). See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992).

Here, the court issued its Scheduling Order on October 5, 2016, expressly ordering that, absent good cause, no further amendment to pleadings was permitted. (Docket No. 27.) Plaintiff attempts to argue that the court's "Scheduling Order did not set a deadline for Plaintiff to amend the pleadings," and thus he is not held to the good cause standard. (Pl.'s Mem. of P. & A. in Supp. of Mot. to Amend (Docket No. 55).) Plaintiff's sole argument in favor of his Motion to Amend, therefore, is that Wells Fargo would not suffer prejudice from the proposed amendments. However, the court disagrees and concludes that good cause is necessary. Plaintiff has not satisfied this heightened standard.

Moreover, because discovery has already closed, Wells Fargo would not be able to properly investigate these new alleged facts without reopening discovery, thereby delaying proceedings. See Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998)(affirming denial of motion "on the eve of the discovery deadline" because it would have required reopening discovery). Accordingly, the court will deny plaintiff's Motion to Amend.

III. Defendant's Motion for Summary Judgment

    A. Legal Standard

Summary judgment is proper "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Discussion

1. Breach of Contract

A claim for breach of contract requires (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 830 (1968). Plaintiff alleges that the TPP offered pursuant to HAMP constituted a valid, enforceable contract that Wells Fargo breached by failing to offer plaintiff a permanent

modification after he successfully paid the three trial payments.

"The Ninth Circuit has recently held that, . . . a TPP Agreement offered pursuant to HAMP is a contract, and a party to that contract may sue for breach if the lender violates a term contained within the four corners of the TPP." Meixner v. Wells Fargo Bank, N.A., 101 F. Supp. 3d 938, 947 (E.D. Cal. Apr. 24, 2015) (Nunley, J.) (citing Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 880 (9th Cir. 2013)). Here, Wells Fargo offered plaintiff a TPP that required plaintiff to make his first monthly trial period payment of $1,550.01 by June 1, 2011. (RJN Ex. J.) In order to qualify for a permanent modification, plaintiff had to make two additional payments of $1,550.01 by July 1, 2011 and August 1, 2011. (Id.) The offer letter notified plaintiff that, "[a]fter all trial period payments are timely made and you have submitted all the required documents, your mortgage would then be permanently modified." (Id.)

Plaintiff alleges that he made all three trial monthly payments on time. However, between June 1 and August 1, it is undisputed that Wells Fargo only received one payment of $1,550.01 from plaintiff's trustee. (Deal Decl. ¶ 20.) That payment was not received until July 12, 2011, after the due date for both the first and second payments had passed. (Id.)

Plaintiff points out that Wells Fargo received $3,122.04 from plaintiff's Bankruptcy Trustee on May 11, 2011, which he claims should have been applied to his TPP payments. However, by May 11, 2011, the TPP had not yet been approved, and the confirmed Chapter 13 plan was still in effect. Plaintiff himself explains that he was not authorized to make TPP payments

until June 21, 2011, when the Bankruptcy Court approved the TPP plan. (Decl. of Stephen M. Reynolds (Docket No. 60-5) ¶ 6.) Accordingly, Wells Fargo was not required to construe this May 11 payment as a TPP payment. Indeed, in deference to the Bankruptcy Court's order, it would have been unwise for defendant to consider this payment as anything other than part of plaintiff's Chapter 13 plan. Thus, the court concludes that the $3,122.04 payment made on May 11 cannot be considered a TPP payment.

Plaintiff admits that the Bankruptcy Trustee "didn't make timely payments to Wachovia."[3] (Deal Decl. ¶ 22, Ex. 18 (Docket No. 56-1).) The terms of the payment plan explicitly state that "[i]f each payment is not received by Wachovia Mortgage in the month in which it is due, this offer will end and your loan will not be modified under the Making Home Affordable program." (Deal Decl. ¶ 19, Exs. 14, 15.) Plaintiff did not satisfy this requirement and therefore he cannot hold defendant liable for breach of contract.

Moreover, plaintiff has suffered no damages, and as such cannot prevail on this claim even if the court were to conclude that plaintiff had timely made the required payments. The TPP states that only if "your loan is permanently modified, you may be eligible to have some of your principal forgiven on a deferred basis." (Deal Decl. ¶¶ 18, 19, Ex. 13.) Accordingly, any forgiveness that was available to plaintiff was merely possible, not guaranteed. However, plaintiff's loan was never permanently modified, and thus he never became eligible for loan

---

[3] Wachovia later changed its name to Wells Fargo Bank, N.A. (RJN, Ex. A)

forgiveness.  Thus, because the loan forgiveness was merely speculative, it cannot form the basis of plaintiff's damages claim.  See Mozzetti v. City of Brisbane, 67 Cal. App. 3d 565, 577 (1st Dist. 1977)("[i]t is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery").

Furthermore, any principal forgiveness that plaintiff argues he was entitled to, but did not receive, cannot constitute damages because plaintiff would still owe repayment of the loan.  Even if plaintiff had been granted partial principal forgiveness, he was required to continue making loan payments, and he has presented no evidence to suggest that he could have continued making such payments after January 2012.  Accordingly, plaintiff would still be in default even if Wells Fargo permanently modified his loan and reduced the principal owed under the TPP.  The court therefore concludes that plaintiff is unable to provide evidence in support of damages, an essential element of his breach of contract claim.  Accordingly, because plaintiff cannot prevail on this claim, the court will grant summary judgment in favor of defendant.

2. Promissory Estoppel

The elements of promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976).  Plaintiff alleges that Wells Fargo made a promise to plaintiff that if he agreed to the

terms of the TPP and made the proposed monthly payments, he would receive a HAMP modification. Plaintiff further alleges that he reasonably relied on that promise by submitting monthly payments. Lastly, he argues that he was damaged because, although he allegedly complied with the modification agreement, he was still denied a permanent modification, and thus he lost the opportunity to pursue other strategies to avoid foreclosure. (Compl. ¶ 42.)

However, plaintiff failed to make the payments in accordance with the TPP, and thus there can be no reliance on any promise, or any related damage, because Wells Fargo made no promises in the event that plaintiff failed to make timely payments. Accordingly, defendant cannot be held liable for promissory estoppel.

### 3. Rosenthal Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. As this court previously explained in its July 13, 2016 Order, a loan servicer violates the Rosenthal Act when it offers a TPP, borrowers comply with the TPP, but the bank then fails to implement a permanent modification. See Corvello, 728 F.3d at 885 (concluding that bank is contractually required to offer permanent mortgage modification if plaintiffs comply with TPP requirements).

Here, because of plaintiff's failure to make timely payments, Wells Fargo was not obligated to offer plaintiff a permanent loan modification, and thus the original Chapter 13

Plan requirements were reinstated.  Therefore, Wells Fargo did not violate the Rosenthal Act but rather simply tried to collect the amount of debt previously agreed to.  Accordingly, the court will grant defendant's Motion for Summary Judgment with respect to this claim.

    4. Wrongful Foreclosure

    Plaintiff asserts that he "reached an enforceable agreement to modify the terms of his loan and to bring his loan current" and "[s]ince plaintiff made all payments subsequent to that date when due until Wells Fargo refused to accept a timely monthly payment in accordance with the Modification Agreement[,] he has a basis for wrongful foreclosure."  (Compl. ¶ 57.)

    A plaintiff will prevail on a wrongful foreclosure claim only "if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale."  See Roque v. Suntrust Mortg., Inc., Civ. No. 09-40 RMW, 2010 WL 546896 (N.D. Cal. Feb.10, 2010)(quoting Collins v. Union Fed. Sav. & Loan Ass'n, 99 Nev. 284, 662 P.2d 610, 623 (Nev. 1983)).

    In this case the TPP agreement never became permanent, and the original Chapter 13 Plan terms were reinstated. Plaintiff failed to continue to make these plan payments, he defaulted, and his bankruptcy petition was dismissed.  Therefore, plaintiff cannot claim that there was no breach of condition or failure of performance at the time of the foreclosure sale. Accordingly, the court will grant Wells Fargo's Motion for

Summary Judgment in regards to plaintiff's claim of wrongful foreclosure.

### 5. Equal Credit Opportunity Act

The Equal Credit Opportunity Act ("ECOA") prohibits creditors from discriminating against credit applicants "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1681(a)(1). In order to effectuate this goal, the ECOA contains strict notice requirements that provide a basis for a cause of action against creditors even without allegations of discrimination. See Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1210 (9th Cir. 2013); see also Errico v. Pac. Capital Bank, N.A., 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010) ("[A] procedural violation of the notice provisions of ECOA may provide the basis for a cause of action even without regard to allegations of discrimination." (citing Dufay v. Bank of Am., 94 F.3d 561 (9th Cir. 1996)).

Under the ECOA, when a lender takes an adverse action against an applicant, the applicant is entitled to a statement of reasons for the action or a written notification of the adverse action that discloses the applicant's right to a statement of reasons within thirty days after receipt of the applicant's request. 15 U.S.C. § 1691(d)(2)(A)-(B). If a creditor fails to provide the required notices, the applicant may sue for a violation of ECOA. See 15 U.S.C. §1961(e); see also Schlegel, 720 F.3d at 1204.

Here, plaintiff alleges that Wells Fargo engaged in an "adverse action," for which it failed to provide a written statement of reasons, when it refused to accept the modified

12

payment amount in January 2012. (Compl. ¶¶ 66-69.) However, plaintiff was in default, and therefore the ECOA does not apply. 12 C.F.R. § 202(c)(2)(iii)(adverse action does not include "any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account"). The denial of a loan modification sought by a borrower in default is not an adverse action that requires written notice. Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1138-39 (N.D. Cal. Sept. 25, 2013). Therefore, the ECOA notice requirements do not apply, and defendant cannot be liable for a violation of the ECOA. Accordingly, the court will grant defendant's Motion for Summary Judgment with regard to this claim.

### 6. Unfair Competition Law

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) (citing Barquis v. Merchs. Collection Ass'n, 7 Cal. 3d 94, 110 (1972)). An act is "unlawful" under the UCL if it violates an underlying state or federal statute or common law. Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

Plaintiff argues that because Wells Fargo violated the Rosenthal Act and ECOA, it also violated the UCL. However, because the court concludes that Wells Fargo did not violate either of these acts, it must also conclude that Wells Fargo has not violated the UCL. Accordingly, the court will grant

13

defendant's Motion for Summary Judgment with regard to plaintiff's UCL claim.

IV.  Plaintiff's Motion for Partial Summary Judgment

Because the court grants summary judgment in favor of Wells Fargo on all of plaintiff's claims, for the same reasons it denies plaintiff's Motion for Partial Summary Judgment on his first claim for breach of contract, his third claim for violations of the Rosenthal Act, his fifth claim for violations of the ECOA, and his sixth claim for violations of UCL.

IT IS THEREFORE ORDERED that plaintiff's Motion to Amend (Docket No. 55) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wells Fargo's Motion for Summary Judgment (Docket No. 51) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's Motion for Partial Summary Judgment (Docket No. 52) be, and the same hereby is, DENIED.

The Clerk of Court is instructed to enter judgment in favor of defendant and against plaintiff.

Dated:  May 15, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE